UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Panagiotis Chatziplis

Write the full name of each plaintiff.

17 CV 4109

(Include case number if one has been assigned)

-against-

PriceWaterhouseCoopers LLP, David Lukach,

Jennifer Lyons, Shaan Elbaum

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

Do you want a jury trial?
☒ Yes   ☐ No

AMENDED
EMPLOYMENT DISCRIMINATION COMPLAINT

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/20/17

Rev. 3/24/17

## I. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Panagiotis | K | Chatziplis |
|---|---|---|
| First Name | Middle Initial | Last Name |

| 4118 20th Avenue |
|---|
| Street Address |

| Long Island City | NY | 11105 |
|---|---|---|
| County, City | State | Zip Code |

| 3475682619 | p_hatziplis@yahoo.com |
|---|---|
| Telephone Number | Email Address (if available) |

### B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

| PriceWaterhouseCoopers LLP |
|---|
| Name |
| 300 Madison Avenue |
| Address where defendant may be served |

| New York | NY | 10017 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:

| David Lukach |
|---|
| Name |
| 300 Madison Avenue |
| Address where defendant may be served |

| New York | NY | 10017 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

Defendant 3: Jennifer Lyons. Defendant 4: Shaan Elbaum
_____
Name

300 Madison Avenue
_____
Address where defendant may be served

New York                         NY                    10017
_____
County, City                    State                  Zip Code

## II. PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

Price Waterhouse Coopers LLP
_____
Name

4118 20th Avenue
_____
Address

New York                         NY                    10017
_____
County, City                    State                  Zip Code

## III. CAUSE OF ACTION

### A. Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

- ☐ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

    The defendant discriminated against me because of my (check only those that apply and explain):

    - ☐ race: _____
    - ☐ color: _____
    - ☐ religion: _____
    - ☐ sex: _____
    - ☐ national origin: _____

- [ ] **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

    My race is: _____

- [x] **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

    I was born in the year: **1969**

- [ ] **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

    My disability or perceived disability is: _____

- [ ] **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

    My disability or perceived disability is: _____

- [ ] **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

### B. Other Claims

In addition to my federal claims listed above, I assert claims under:

- [x] **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

- [x] **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

- [ ] Other (may include other relevant federal, state, city, or county law):

    _____

## IV. STATEMENT OF CLAIM

### A. Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☒ terminated my employment
- ☒ did not promote me
- ☐ did not accommodate my disability
- ☐ provided me with terms and conditions of employment different from those of similar employees
- ☒ retaliated against me
- ☒ harassed me or created a hostile work environment
- ☐ other (specify): _____

### B. Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

See attached

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V. ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☒ Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?   April 6, 2017

☐ No

Have you received a Notice of Right to Sue from the EEOC?

☒ Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?   05/01/17

When did you receive the Notice?   05/06/17

☐ No

## VI. RELIEF

The relief I want the court to order is (check only those that apply):

☐ direct the defendant to hire me

☐ direct the defendant to re-employ me

☐ direct the defendant to promote me

☐ direct the defendant to reasonably accommodate my religion

☐ direct the defendant to reasonably accommodate my disability

☒ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

pay damages of $960,000 arising from lost back pay and front pay, lost employment benefits, degraded future earning capacity and career opportunities, emotional distress from embarrassment, defamation and anguish as well as court expenses incurred herein and interest.

## VII. PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 6/20/2017 | | *P Chatziplis* |
|---|---|---|
| Dated | | Plaintiff's Signature |

| Panagiotis | K | Chatziplis |
|---|---|---|
| First Name | Middle Initial | Last Name |

4118 20th Avenue, 1L
Street Address

| Long Island City | NY | 11105 |
|---|---|---|
| County, City | State | Zip Code |

| 3475682619 | p_hatziplis@yahoo.com |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes   ☐ No

    If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

**Pete Chatziplis v. PriceWaterhouseCoopers (PWC)**

**Defendants**

1. David Lukach, Jennifer Lyons and Shaan Elbaum ("the Defendants") are employed in the Financial Markets Group ("FM Group", formerly known as the Financial Instruments, Structured Products and Real Estate Group) of PriceWaterhouseCoopers LLP in the New York office, at 300 Madison Avenue, 10017 NY.

    1.1. David Lukach is a Partner in the FM Group; upon personal knowledge and belief he is among the most senior persons in FM Group's decision-making hierarchy

    1.2. Jennifer Lyons is a Human Resources ("HR") Director in the FM Group; she is FM Group's most senior Human Resources employee

    1.3. Shaan Elbaum is a Managing Director in FM Group's, Private Equity Specialist Group ("PESG", also known as Portfolio Valuation Group); upon personal knowledge and belief he is PESG's administrative head, overseeing resource planning and staff allocation amongst others.

2. The Defendants' responsibility is based on the following merits:

    2.1. David Lukach and Jennifer Lyons:
    - for the Plaintiff's termination that was discriminatory in nature; Lukach and Lyons announced the termination in person while Lyons signed the termination letter
    - for perpetrating and/or tolerating a culture and practices that were discriminatory

    2.2. Jennifer Lyons for failing to investigate and provide feedback to the Plaintiff's ethics complaint

    2.3. Shaan Elbaum as the acting day to day manager of PESG for:
    - failing to address certain staff members' harassing and discriminatory behavior towards the Plaintiff
    - for creating a Performance Improvement Plant of disciplinary and discriminatory nature, as well as not following through with it and failing to provide feedback
    - placing the Plaintiff into a disadvantageous career development prospect with his actions or omissions

3. PriceWaterhouseCoopers LLP ("PwC" or the "firm") is a Delaware limited liability partnership, having its principal office located at 300 Madison Avenue in New York. The firm provide auditing, tax and management consulting services firm. It is a member firm of PricewaterhouseCoopers International Limited that has offices in 157 countries and over 223,000 employees worldwide. For the year ending June 30, 2016, PwC's global gross revenues were $35.9 billion, of which $14.9 billion in North America & Caribbean. PWC is among the largest four accounting firms globally (namely PwC, KPMG, Deloitte, and Ernst & Young, collectively known as the Big 4) that jointly generated $127.7 billion in revenues in 2016 and had 887,000 professionals.

4. PwC classifies its staff in the following general hierarchy: Junior Associates, Associates, Experienced Associates, Senior Associates, Managers, Senior Managers, Directors and Managing

    Directors. Above those individuals are Partners, Managing Partners, a Board of Partners and Principals of PwC, and a Global Board of the PwC network of affiliated entities around the world.

5. The Private Equity Specialist Group's scope of work is to review the procedures that various private equities are using in valuing and then reporting their equity and debt investments in their financial statements. The work is carried out on behalf of PwC auditors in the course of auditing a corporation's financial statements. At the time that the Plaintiff worked in the group it employed year-round 15 full time professionals, while during the audit busy period (January to April) its headcount rose to around 40 by adding part time external hires and interns, as well as transfers from overseas PwC offices on secondment and part-time work from other firm employees. PESG was originally part of the Business Valuation Group within PWC's Transaction Services business line. In June 2015 PESG was moved under the Financial Markets Group.

**Plaintiff**

6. Plaintiff Panagiotis Chatziplis (the "Plaintiff") is a Chartered Financial Analyst, who lives in Queens, New York. He is a permanent resident of the United States and a citizen of Greece. He was hired at PwC in January 8, 2015 and was terminated in July 20, 2016. He worked at PwC's New York office, at the Private Equity Specialist Group as a Senior Associate.

7. Chatziplis holds a Master in Business Administration (MBA) from the Manchester Business School of the University of Manchester in England, UK and a Diploma in Mechanical Engineering from the National Technical University of Athens in Greece. Prior to his work at PwC he has worked as Manager at the Business Valuation Group of Deloitte in New York, in Corporate Finance in Deloitte Greece and as independent management consultant.

**Age Discrimination**

8. PWC has an exceptionally low representation of employees over the age of 40 in its ranks, especially at lower and middle levels, and at the same time an exceptionally high representation of younger ages, mostly below 35:

    8.1. PwC has around 46,000 employees in the US with the average age being 27, according to its website. Reportedly, 80% of workforce were millennials in 2016. This is far from normal according to Bureau of Labor statistics:

- The average age in the accounting profession is 45.4.
- Average age in Financial Services, industry-wide, is 44 and in the Securities sector is 44 as well
- Average age across all Professional Services industry is 42.3
- Even most of tech startups have higher average age than PwC:



*Source: Look how young Facebook's workforce is compared to Hewlett-Packard's, Business Insider, Julie Bort and Mike Nudelman, Nov. 22, 2015,*

- In PwC's "Future of Work – A journey to 2022" report there are no photos of persons that look over 30 (2022 was eight years away at time of its publication in 2014).

8.2. PwC has a mandatory retirement age for partners at 60. Therefore, the closer an applicant is to the age of 60, the lower the time window for the individual to rise through the ranks to become and serve as a partner. This creates a bias towards hiring younger employees at lower or middle levels.

8.3. PwC has been recently sued for age discrimination in the context of recruiting: *Steve Rabin v. PwC, U.S. District Court for the Northern District of California, No. 3:16-cv-02276 filed 4/27/16* class action. According to the complaint, PWC maintains hiring policies and practices for giving preference to younger employees that result in disproportionate employment of them. The class action is backed by the AARP foundation and represented by Outten & Golden LLP and The Liu Law firm.

8.4. As the Firm often needs to deploy readily available experience at project work it launched in 2016, a sourcing platform for freelancers (Talent Exchange) to facilitate hiring of experienced professionals on a project by project basis, rather than full-time. This is not a practice followed in college recruitment, where large part of PwC's hiring takes place and where positions offered are mostly full-time.

8.5. The Firm consistently exhibits specific interest and preferential treatment towards younger colleagues. PwC has undertaken an extensive global research in 2013 in cooperation with the University of Southern California and the London Business Scholl regarding specifically traits of millennials and continually monitors developments in this area. Furthermore the firm created a platform to enable internal transfers in 2016. This, according to public communications, addresses PwC research findings which indicate that

    millennials differ from the previous generations and prefer more flexible career paths. The platform is expected to assist towards staff retention.

9. Lack of transparency is deeply rooted in PwC and is also exhibited in cases of abuse:

    9.1. The Firm prides itself for employee-friendly policies and high moral standards but has not published qualitative or quantitative information on the outcomes of complaints that its internal Ethics group receives.

    9.2. According to PwC policies (Code of Conduct) employees have to address concerns internally before reaching out externally. This to some extend is based on the confidentiality of the information it handles. On these grounds the Firm has turned against whistleblowers in the past, for example in the LuxLeaks case where information on controversial tax deals in Luxembourg, was revealed. This is enforcing a secretive culture that is inhibiting outside reporting. For the same reason, information pertaining to work issues are included herein sparingly.

    9.3. The firm consistently provided senior employees with immunity to both internal and external criticism. Complacency as regards to partner behavior as well as their indifference towards public opinion has been publicly exhibited on numerous occasions:

- During the 2017 Oscar ceremony, where PwC partners were assigned to auditing the voting results, they failed spectacularly in the most basic duty of handing out the results for the Best Picture Award. The firm didn't criticize them as it may be doing internally in cases of misconduct and negligence. It was the Oscar Academy that requested the obvious: their removal from future ceremonies.

- According to a lawsuit filed by the Los Angeles Department of Water and Power ("LADWP"), PwC staff responsible for making invoice decisions at project undertaken for LADWP, showed disregard of basic professional decency. The complaint includes allegations for misrepresenting qualifications as well as overcharging and falsifying expenses that included such expenses as for partying, "bottle service", lavish accommodation in Las Vegas and prostitutes (*City of Los Angeles v. PriceWaterhouseCoopers LLP, Case No BC 574690 March 6, 2015, amended June 3, 2016, Superior Court of the State of California for the county of Los Angeles*).

**FACTS**

The Plaintiff has experienced age discrimination through unprofessional behavior, harassment, retaliation, denied promotion and eventually termination of employment. The whole treatment resembled an orchestrated effort to victimize the Plaintiff and place him in a disadvantaged position once PESG had managed to build know-how in this particular area. The following facts and incidents are indicative of this behavior.

10. Most of the employees at PESG were much below 35; the Plaintiff was the older at his level and below.

    10.1. The average age of PESG's full time employees was around 34.

10.2. The average personnel at the same level as the Plaintiff (Senior Associate) was around 31.

10.3. The only Senior Associates that were not promoted during the two years were the Plaintiff (the oldest) and the only female.

10.4. PESG hired two older employees at the Senior Associate level (between 55-60) for a four month contract between December and April 2016 as according to internal discussions, it needed readily available, seasoned know-how (most of the Senior Associates and Associates, except from the Plaintiff didn't have more than a couple years of experience on the subject, if any at all). Their contracts were not renewed after this period.

11. The Plaintiff experienced unprofessional and harassing behavior from a supervising Director, Richard Billovits, that was not exhibited towards other individuals and despite complaining and reporting this discriminatory behavior the Defendants failed to address and correct it.

    11.1. Indicatively, a highly illustrative and well documented example of this behavior, took place on March 29, 2016. Billovits asked Chatziplis for some work to be done by next day. At this particular point, the team's reporting deadline was at least one week away (and eventually was further delayed) and at the same time the Plaintiff was facing two not transferrable deadlines for next day reporting to two other Directors. The total work from just the two other projects was in excess of 15 hours, over the next 12 hours including the night, which means it was practically impossible to satisfy the requests. When Chatziplis indicated that was busy, the Director sent him an exceptionally unprofessional and harassing email, with many capital letters, asking him to complete the work by the next day irrespective.

    11.2. Previously that day Billovits, during a project status conference call with many other team members, mentioned that this project was very demanding and usually resulted in people getting negative reviews. The Plaintiff took this as a direct hint to him as he had received a negative rating for this project the previous year.

    11.3. The Plaintiff didn't answer Billovits' unprofessional email and forwarded it to the group's HR, Kitsy Blanc, asking for advice as he considered it unacceptable. Kitsy Blanc, replied advising him to talk to Billovits live (ie. HR didn't intervene, and not even took note of the foul language). The Plaintiff also told Kitsy Blanc he was not feeling well, to which HR didn't show any interest, and that he would leave the office to get some air as was not feeling well. Next day the Plaintiff checked with a doctor that prescribed a two day rest; however he returned to finish the urgent work and took only the next day off. On March 31, 2016 he reported the incidence to the internal Ethics department.

    11.4. This harassing behavior contrasts with PwC's publicly communicated culture. According to PwC's code of conduct: *"Trust begins with each of us treating each other with care, courtesy, dignity, fairness, and respect. We take appropriate measures to protect the safety of PwC people. We provide a safe working environment free of abusive, violent, threatening or other disruptive behaviour. We do not tolerate harassment, discrimination, bullying, or disrespectful behavior. These behaviours undermine the integrity of our relationships."* Note that when FM Group's senior HR director Jennifer Lyons saw the email, in the context of the ethics complaint reporting, was visibly shocked and admitted that it was not in accordance with the firm's culture.

12. PwC failed to investigate through once the Plaintiff complained and reported the discriminatory behavior and retaliated by putting the Plaintiff on a Performance Improvement Plan ("PIP") during his first year of employment and eventually terminating him in the next year.

   12.1. After the Plaintiff reported the March 29, 2016 incident to PwC's Internal Ethics department he was contacted over the phone by an employee that took notes and referred the case to FM Group's HR Director Jennifer Lyons. By doing so the complaint was not referred to a third party reviewer but somebody who is part of the Plaintiff's immediate chain of command. The Plaintiff never received any feedback of this investigation. This is indicating frustration, negligence and ultimately retaliation. Eventually the Plaintiff was terminated a short period after reporting this, on July 20, 2016.

   12.2. Each employee at PwC is assigned to a Career Coach and a Relationship Partner that monitor performance, mentor and collect and provide feedback that will be considered during the year-end performance reviews. The Plaintiff's assigned career coach was Billovits. The Firm ignored the Plaintiff's requests to reassign him to another career coach other than Billovits to whom he was also reporting for most of the project work and already had a strained relationship with. This accentuated the situation. During the first year of employment, once the Plaintiff complained to this Director for the poor review he received, he downgraded the performance rating even further. The Plaintiff complained for this behavior to the HR group.

   12.3. The firm also failed to reassign the Plaintiff to another team manager other than the one with whom much of the PIP issues have been created, under the supervision of Billovits. This particular manager was on short-term transfer (secondment) from a foreign member firm. The manager was not familiar with the job requirements in the US, had no prior working experience in the US on the subject and a different working style (direct manners and micromanaging). This difference in behavior is admitted as an issue in the PIP. It created a very frustrating experience to the Plaintiff as well as other staff. In the Plaintiff's case however there were already identified communication issues during the first year and the Firm insisted on reassigning the Plaintiff to this manager showing disregard for his requests, perpetrating the harassment.

   12.4. The firm placed the Plaintiff on a Performance Improvement Plan but didn't follow through the process which indicates that its purpose was a merely of discriminatory, harassing and intimidating nature. During the first year of employment the Plaintiff was given unsatisfactory performance ratings on grounds not related to the output of his work but on issues such as level of communication with more senior staff. The content and language used in the PIP indicates disciplinary action (it calls for reporting workload and location at the start of each day which is unrealistic if not demeaning, considering that nobody else had to do that, more so a person with considerable work experience). Although the Plaintiff was supposed to go through three monthly reviews of progress as part of the PIP, only one took place. Furthermore the Plaintiff was given no feedback (as was the indicated procedure) at the end of the PIP's three month duration.

13. PwC and the defendants didn't treat the Plaintiff fairly and in a similar way to other staff:

   13.1. The firm didn't assign the Plaintiff to project work during a low business activity season that lasted for at least five months (May-October 2015) or briefly assigned him to an

unrelated project. The unrelated project involved paralegal type of work in another department at a client location that was outside the group's job description that the Plaintiff was hired for. Most of the other staff were spared from this type of work and instead were retained in internal projects. Being assigned on work that he was not hired for or being left idle, negatively affected the Plaintiff's psychology and career development. That is because utilization rates are taken into consideration during the annual performance review process but also because it reduced the opportunity to gain useful exposure through relevant project work.

13.2. The firm failed to reassign the Plaintiff to a different group even though he was idle for a large period of time and asked for a transfer. According to PwC's website, its Culture on Professional Development involves: *"We emphasize the importance of real-time development at PwC so our people continually improve their professional skills and enhance their personal brand. We also offer a wide variety of training and developmental opportunities so our people stay relevant in the marketplace and build their credentials and experiences."* The Plaintiff had expressed interest for another position within the firm (in the Corporate Development department, amongst others) but was not offered the potential to transfer. However without prior communication, PESG transferred there a much younger colleague.

13.3. It was expressed to the Plaintiff that in order to stand chances to transfer he had to exhibit more than satisfactory performance in his position which creates a Catch 22 paradox. Furthermore somebody that has a good performance in a particular group would probably not want to transfer to a different environment and subject while his/her absence would be more costly to their group than somebody that is not performing as well.

13.4. When the Plaintiff informed the group's HR that he wanted to move to another group she said that he was free to explore internal opportunities on his own but at the same time demanded that he stayed through the audit busy period and perform duties impeccably as in other case it would have a negative effect on any referral request. That was another indication of harassment, unrelated to quality of work.



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## New York District Office

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622

Panagiotis Chatziplis
41-18 20th Avenue
Apt 1L
Long Island City, NY 11105

Re:  EEOC Charge No. 520-2017-01874
     Chatziplis v. Pricewater House Coopers LLP

Dear Mr. Chatziplis,

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. The procedures apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

We have evaluated your charge based upon the information you submitted, and have determined that further investigation will unlikely result in a determination that Respondent violated one of the federal laws enforced by the Commission. Therefore, your charge will be dismissed.

Attached is your Dismissal and Notice of Rights. If you want to pursue this matter further in federal court, your lawsuit must be filed within 90 days of your receipt of the Notice.

Please contact Investigator Sarina Shaver at (212) 336-3776 if you have any questions.

Sincerely,

_____ for       5/1/17
Kevin J. Berry                Date
District Director

Enclosure(s):
   EEOC Form 161, "Dismissal and Notice of Rights"
   Copy of EEOC handout, "Facts About Filing"

EEOC Form 161 (11/16)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Panagiotis Chatziplis<br>41-18 20th Avenue<br>Apt 1I<br>Long Island City, NY 11105 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2017-01874 | Sarina L. Shaver,<br>Investigator | (212) 336-3776 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Kevin J. Berry,
District Director

5/11/17 (Date Mailed)

Enclosures(s)

cc: Jennifer Lyons
Director of Human Resources
PRICEWATER HOUSE COOPERS LLC
300 Madison Avenue
New York, NY 10017

Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*