UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PANAGIOTIS CHATZIPLIS,

        Plaintiff,

–against–

PRICEWATERHOUSECOOPERS LLP,
DAVID LUKACH, JENNIFER LYONS, and
SHAAN ELBAUM,

        Defendants.

**OPINION AND ORDER**

17 Civ. 4109 (ER)

Ramos, D.J.:

  Panagiotis Chatziplis ("Plaintiff" or "Chatziplis"), proceeding pro se, brings this suit under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code. § 8-107 *et seq.*, against Defendants PriceWaterhouseCoopers LLP ("PWC"), David Lukach ("Lukach"), Jennifer Lyons ("Lyons"), and Shaan Elbaum ("Elbaum") (collectively, "Defendants"). *See* Am. Compl. (Doc. 8). Defendants move to compel arbitration and stay all proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq. See* Doc. 23. For the reasons set forth below, Defendants' motion to compel arbitration is GRANTED, and this action is STAYED pending arbitration.

## I. Factual Background[1]

Chatziplis began working for PWC as a senior associate in the private equity specialist group on January 8, 2015. *See* Am. Compl. ¶ 6. As a condition of his employment, Chatziplis signed PWC's employment agreement, which includes an arbitration provision:

> 15. Dispute Resolution
> You and [PWC] agree, as a condition precedent to your employment, to be bound by the terms of the arbitration agreement attached hereto as Exhibit A, which is incorporated herein by reference, and which requires both you and the Firm to submit to final and binding arbitration all claims covered under the arbitration agreement.

Opposition to Defendants' Motion to Compel Arbitration ("Pl.'s Mem.") (Doc. 25) Ex. 1 ("Employment Agreement"). Exhibit A of the employment agreement, in turn, states that the parties will arbitrate "all disputes, controversies, and claims relating to or arising out of [the] employment agreement or termination of that agreement . . . includ[ing], without limitation, claims under . . . the Age Discrimination in Employment Act." *See* Pl.'s Mem. Ex. 1 Ex. A ("Arbitration Agreement") ¶ 1c.

While Chatziplis was working in the private equity specialist group, he was the oldest senior associate. Am. Compl. ¶ 10.3. He was also one of only two senior associates in the private equity specialist group who was not promoted during his tenure. *Id.* Between December 2015 and April 2016, the group also hired two senior associates, who were between the ages of fifty-five and sixty, on a temporary basis. *Id.* ¶ 10.4. Neither of their contracts were renewed after the initial four month terms. *Id.* Chatziplis alleges that his supervisors treated him in

---

[1] The following facts are based on the allegations set forth in Plaintiff's Amended Complaint, which the Court accepts as true for purposes of the instant motion. *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 473 (S.D.N.Y. 2013) (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) ("In resolving a defendant's motion to compel arbitration, [the Court] accept[s] as true . . . [the] factual allegations in the plaintiffs' complaint that relate to the underlying dispute between the parties.") (internal quotation marks omitted)).

unprofessional and harassing ways, and that this behavior was not exhibited toward his younger colleagues. *Id.* ¶ 11.  For example, on one occasion, Chatziplis emailed a supervisor that he would be unable to accommodate a short deadline due to pressing work on other matters. *Id.* ¶ 11.1.  The supervisor responded in a strongly worded email, and when Chatziplis complained to the Human Resources representative for his group, she simply advised him to speak with the supervisor directly and did not intervene further. *Id.* ¶¶ 11.1, 11.3.  Chatziplis further complained to the internal ethics department; he was contacted and interviewed, but never received any follow-up information from the ethics department. *Id.* ¶¶ 11.3, 12.1.  PWC did not reassign Chatziplis to work with different managers and mentors after receiving complaints from him on this and similar occasions. *Id.* ¶¶ 12.2–12.3.

Chatziplis also alleges that after receiving unsatisfactory ratings in his first year of employment and being put on a performance improvement plan, the plan was not followed and Chatziplis did not receive the remedial services outlined in the plan. *Id.* ¶ 12.4.  During a slow period in the private equity specialty group, Chatziplis requested a temporary transfer; however, his request was denied because he was told he needed a performance rating of at least satisfactory. *Id.* ¶¶ 13.1–13.3.  He was ultimately terminated by PWC on July 20, 2016. *Id.* ¶ 12.1.

On April 6, 2017, Chatziplis filed an EEOC complaint. *See generally id.*  On June 1, 2017, he filed the instant Complaint, which he amended on June 20, 2017. *See* Docs. 1, 8.  On November 10, 2017, Defendants filed a motion to compel Chatziplis to proceed with arbitration on the basis of his employment agreement. *See* Doc. 23.

## II. Applicable Law

Under the FAA, "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and places arbitration agreements on "the same footing as other contracts." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511 (1974)). Thus, parties are not required to arbitrate unless they have agreed to do so. *Id.* Before an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties. *Id.* This question is determined by state contract law principles. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citing *Specht v. Netscape Commc'ns Corp.*, 206 F.3d 17, 27 (2d Cir. 2002)).

In the context of motions to compel arbitration, allegations related to the question of whether the parties formed a valid arbitration agreement are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial, which is a similar standard to that applicable for a motion for summary judgment. *Schnabel*, 697 F.3d at 113; *see also Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel arbitration brought under the [FAA] . . . , the court applies a standard similar to that applicable for a motion for summary judgment. If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary.") (internal citations omitted). On a motion for summary judgment, the court considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and

admissions on file, together with . . . affidavits," and draws all reasonable inferences in favor of the non-moving party. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks and citations omitted).

If the Court determines that a valid agreement to arbitrate exists, the Court must then determine whether the particular dispute falls within the scope of arbitration agreement. *Specht*, 306 F.3d at 26 (2d Cir. 2002) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987)). If the dispute falls within the scope of the arbitration clause, the "role of the court ends and the matter is one for arbitration." *Unique Woodworking, Inc. v. N.Y. City Dist. Council of Carpenters' Pension Fund*, No. 07 Civ. 1951 (WCC), 2007 WL 4267632, at *10 (S.D.N.Y. Nov. 30, 2007).[2]

## III. Discussion

### A. Contract Formation

Neither party disputes that Chatziplis signed the PWC employment agreement in December 2015, prior to his employment with PWC and that the employment agreement included an arbitration provision. *See* Memorandum of Law in Support of Defendants' Motion to Compel Arbitration ("Defs.' Mem.") (Doc. 23-1), at 5–6; Pl.'s Mem. at 18–20 (explaining the context in which Chatziplis signed the employment agreement). In opposition to Defendants' motion to compel arbitration, Chatziplis raises two primary arguments to assert that the

---

[2] Where an arbitration agreement provides that the arbitrator will have jurisdiction over questions of arbitrability, then the court's only role is to determine whether the arbitration provision is enforceable. *See Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) ("[W]hen . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."). Here, however, the arbitration agreement limits the jurisdiction of the arbitration and provides that the arbitrator "shall not have the authority to decide jurisdictional or arbitrability disputes, including disputes over the formation, existence, validity, interpretation, or scope of the agreement under which Arbitration is sought." *See* Arbitration Agreement ¶ 3(f).

arbitration agreement is invalid. First, he argues that the agreement is substantively unconscionable because arbitration favors PWC. *See* Pl.'s Mem. at 4–17. Second, he argues that the agreement is procedurally unconscionable because he signed the agreement without all the relevant information and under significant time pressure. *See id.* at 12, 18–20. Both arguments are unavailing.

First, an agreement is substantively unconscionable only if "it is so grossly unreasonable as to be unenforceable according to its literal terms and those contract terms are unreasonably favorable to the party seeking to enforce the contract." *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013) (quoting *Lawrence v. Miller*, 11 N.Y.3d 588, 595 (2008)). Chatziplis points to several arbitration rules that he believes are unfair: (1) JAMS, rather than the American Arbitration Association, is the arbitral forum, *see* Pl.'s Mem. at 5; (2) PWC is bound to cover arbitration fees but not Plaintiff's attorney expenses, if he chooses to retain counsel, *id.* at 5–6; (3) the arbitration agreement does not state that compensatory and punitive damages and injunctive relief would be available as arbitration awards, *id.* at 7, 9–10;[3] (4) the class action waiver in the agreement, *id.* at 7; (5) the confidentiality provision, *id.* at 8; (6) the jurisdictional clause providing that the arbitrator will not decide questions of arbitrability, *id.* at 9;[4] and (7) the limitations on his appellate rights, *id.* at 13–14. The Court finds that these

---

[3] Here, Chatziplis misconstrues the arbitration agreement. Although the agreement does not make explicit the various forms of relief available through arbitration, it provides that the arbitrator will have the authority "to award all remedies available . . . under applicable law." *See* Arbitration Agreement ¶ 3f. The arbitration agreement also states that "[t]he arbitration shall be held under the auspices of JAMS, in accordance with JAMS Employment Arbitration Rules and Procedures (effective July 15, 2009)." *Id.* ¶ 3a. Those rules, in turn, state that an arbitrator "may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including but not limited to specific performance of a contract or any other equitable or legal remedy." Pl.'s Mem. Ex. 2 ¶ 24(c).

[4] Chatziplis is referring to the paragraph of the arbitration agreement that states that "the arbitrator shall not have the authority to decide jurisdictional or arbitrability disputes." Arbitration Agreement ¶ 3f. Chatziplis does not state

provisions do not render the arbitration agreement "grossly unreasonable;" to the contrary, it is well-settled that many of the provisions he highlights are acceptable in arbitration agreements. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 123 (2d Cir. 2010) (upholding decision that a clause limiting the appealability of an arbitration decision was not unconscionable); *Isaacs*, 968 F. Supp. 2d at 569 ("When both an employer and its employees are bound to an agreement to arbitrate, when the terms of the agreement are equally applicable to both parties, and when the employer bears any unreasonable cost of the arbitration, the arbitration agreement is not unreasonably favorable to the employer."); *Suqin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 392 (S.D.N.Y. 2017) (finding that where a confidentiality provision applies equally to both parties, it "cannot be said to render the Arbitration Agreement substantively unconscionable"); *Sacchi v. Verizon Online LLC*, No. 14 Civ. 423 (RA), 2015 WL 765940, at *10 (S.D.N.Y. Feb. 23, 2015) (confirming that class action waivers do not render arbitration agreements unconscionable even in states where class action waivers are prohibited by law). Therefore, the Court finds that nothing in the arbitration agreement itself supports Chatziplis' contention that it is substantively unconscionable.[5]

Second, Chatziplis argues that because he did not have all of the relevant information and had to sign the employment agreement in a short period of time, the agreement was procedurally unconscionable. Pl.'s Mem. at 12, 18–20. In considering whether an agreement is procedurally

---

why such a provision might be unconscionable or even unfair; rather, the delineation of matters for a court of competent jurisdiction and matters for an arbitrator is noncontroversial in arbitration agreements.

[5] Chatziplis also argues that the employment agreement as a whole is unconscionable because of the "at-will" clause, which states that PWC "may change the terms and conditions of the employment relationship . . . for any reason or for no reason, at any time." Pl.'s Mem. at 13 (citing Employment Agreement ¶ 4). However, a party may not attack an arbitration agreement by challenging another provision of the contract in which it is contained. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010). Therefore, Plaintiff's arguments about the at-will clause are unpersuasive.

unconscionable under New York law, a court should consider whether the party seeking enforcement "used 'deception' or 'high pressure tactics' in the formation of the agreement or there was a 'disparity in bargaining power' between the parties." *Isaacs*, 968 F. Supp. 2d at 570 (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003)). However, "the fact that there is inequality in bargaining power between an employer and a potential employee is not a sufficient reason to hold that arbitration agreements are not enforceable in the employment context." *Id.* (citing *Ragone*, 595 F.3d at 121).

To demonstrate procedural unconscionability, Chatziplis states that when he signed the arbitration agreement, he did not receive a copy of PWC's severance plan. *Id.* at 12. According to Chatziplis, this is relevant because the severance plan could have included "additional remedies" beyond what he received after termination. *Id.* The Court cannot see the relevance of the severance policy to the enforceability of the arbitration agreement, and therefore disregards Chatziplis' arguments about the availability of the severance plan at the time he entered into his employment agreement.

Next, Chatziplis asserts that he did not have a "cooling-off" period in which to weight the benefits and costs of signing an arbitration agreement because he received the offer on December 18, 2014 and was told the forms needed to be filled out by January 5, 2015 so that he could begin his employment. *Id.* at 18–19.[6] He was also in Greece for the holidays, which "critically impaired" his ability to consult with an attorney prior to signing the agreement. *Id.* The fact that PWC required Chatziplis to sign the arbitration agreement prior to his employment does not render the agreement invalid. *Isaacs*, 968 F. Supp. 2d at 570. Although Chatziplis now states

---

[6] Although he filled the forms out by January 5, 2015, Chatziplis' start date was moved to January 8, 2015. Pl.'s Mem. at 20.

8

that he felt pressured to sign the document so he could begin employment, he does not assert that he did not understand the arbitration provision, that he did not have time to read it, and or that its meaning was concealed to him by PWC. Had he felt he needed more time, he could have asked for it—but there is no evidence he did so, or that PWC would have refused. *See Elite Parfums, Ltd. v. Rivera*, 872 F. Supp. 1269, 1273 (S.D.N.Y. 1995) (rejecting the argument that the defendant had no time to consult a lawyer or get the agreement translated when the plaintiff's representative told the defendant that he had only a "few hours"). Therefore, the Court finds that the arbitration agreement is not unconscionable, and was validly entered into.[7]

### B. Scope of the Arbitration Agreement

In the arbitration agreement, Chatziplis and PWC agreed to arbitrate "all disputes, controversies, and claims relating to or arising out of [the] employment agreement or termination of that agreement . . . includ[ing], without limitation, claims under . . . the Age Discrimination in Employment Act." *See* Arbitration Agreement ¶ 1(c). Chatziplis argues that his claims nevertheless are not covered by the scope of the arbitration agreement because he also raises issues that implicate Title VII and the Sarbanes-Oxley Act. *See* Pl.'s Mem. at 20–24.

Chatziplis has had the opportunity to state his claim three times: in his EEOC charge, in his original complaint, and in his amended complaint. In none of those documents did Chatziplis assert national origin discrimination, or make any factual allegations that would support a claim

---

[7] To the extent that Chatziplis also alleges that the arbitration agreement is invalid due to duress or coercion, the Court finds those arguments unavailing. *See Marciano v. DCH Auto Group*, 14 F. Supp. 3d 322, 334–35 (S.D.N.Y. 2014) (finding that there were insufficient allegations of coercion where an employee alleged that her employer "rushed" her to sign the arbitration agreement because it was her obligation to read and understand the agreement and insufficient allegations of duress where an employee willingly sought employment and voluntarily completed the employment agreement).

for national origin discrimination. *See* Compl. (Doc. 1); Am. Compl. (Doc. 8).[8]  Even if Chatziplis can make allegations that would support a Title VII claim, and those allegations are not time-barred, there is no reason why Chatziplis cannot raise these issues in arbitration.[9]

Similarly, Chatziplis argues that his claim falls under the Sarbanes-Oxley Act because he worked "in a public accounting function" at PWC and his internal complaint was a form of whistleblowing. *Id.* at 23.  But the Sarbanes-Oxley Act's whistleblowing protections apply only to complaints that a publicly traded company is engaged in wire fraud, mail fraud, securities fraud, or another form of fraud against its shareholders. *See Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 222 (2d Cir. 2014).  Chatziplis has made no allegations that his internal complaints were related to fraud; therefore, his arguments regarding the arbitrability of Sarbanes-Oxley claims are misplaced.

### C. Additional Arguments

Finally, Chatziplis raises additional arguments that set forth why, as a policy matter, he should not be forced to arbitrate his claims.  He discusses the policy concerns implicated by age discrimination in the work place, PWC's culture of overworking its staff, and the trend of arbitration awards favoring employers rather than employees. *See* Pl.'s Mem. at 15–16, 24–25.  These arguments, however, do not change the fact that Chatziplis entered into a valid arbitration

---

[8] For this reason, the Court denies Chatziplis' motion for limited discovery relating to his discussion with the ethics department at PWC, which he requested to learn more about "potential discrimination on basis of age or national origin that would raise Title VII claims which are not covered by the PWC Arbitration Agreement." *See* Doc. 24.

[9] *See* Arbitration Agreement ¶¶ 1(d)(viii) (excluding Title VII claims from arbitration only "unless and until federal law no longer prohibits the Firm from mandating arbitration of such claims.").  In fact, the Second Circuit does *not* prohibit employers from mandating arbitration of Title VII claims. *E.g.*, *Virk v. Maple-Gate Anesthesiologists, P.C.*, 657 F. App'x 19, 23 (2d Cir. 2016).  Although Chatziplis points to federal regulations limiting the Department of Defense's ability to enter into contracts with employers that require the arbitration of Title VII claims, that is inapplicable here, where Defendants have put forward admissible evidence to show that PWC has not been a party to a relevant Department of Defense contract. *See* Doc. 26-2.

agreement which explicitly covered claims brought on the basis of age discrimination. And the Supreme Court has made clear that the Federal Arbitration Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The Court must therefore grant Defendants' motion to compel arbitration.

### D. Conclusion

For the reasons set forth above, Defendants' motion to compel arbitration is GRANTED, and this action is STAYED pending arbitration. The parties are instructed to advise the Court within 48 hours of the outcome of the arbitration. The Clerk of the Court is respectfully directed to stay this action pending arbitration and terminate the motion, Doc. 23.

It is SO ORDERED.

Dated: July 6, 2018
New York, New York

_____
Edgardo Ramos, U.S.D.J.